[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-10659

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

TRAVIS M. BUTLER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:19-cr-00156-MCR-1

_____

Before WILSON, BRANCH, and TJOFLAT, Circuit Judges.

WILSON, Circuit Judge:

Travis Butler appeals his total life sentence following his conviction for enticement of a minor to engage in sexual activity and production of child pornography. Butler contends that his life sentence, imposed after an upward variance, is substantively unreasonable because the district court failed to consider his mitigation arguments, considered improper factors, and unreasonably weighed the 18 U.S.C. § 3553 sentencing factors. Because Butler has not shown that the district court abused its discretion, we affirm.

## I.

### A.

In November 2019, Travis Butler was arrested and charged in a five-count indictment for various offenses related to his illicit sexual relations with a 15-year-old female. Butler pleaded guilty to Counts One and Two of the indictment in exchange for the remaining counts being dismissed. Count One charged Butler with enticement of a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). Count Two charged Butler with production of child pornography, in violation of 18 U.S.C. §§ 2251(a) and (e).

Butler's presentence investigation report (PSI) described the offense conduct as follows. In September 2019, the Pensacola Police Department (PPD) received two Cybertips from the National Center for Missing and Exploited Children following its

determination that an IP address, which was used to upload child pornography to Facebook Messenger, was geo-located to Pensacola, Florida. Both of the Cybertips referenced Facebook accounts used by Butler and the victim.

The first Cybertip reported an incident that occurred in June 2019. The report stated that the victim uploaded to Facebook Messenger, on three separate occasions, images of what appeared to be child pornography. The Facebook account that received the messages was used by Butler. PPD reviewed the pictures, which included graphic images of a young female's vagina. The second Cybertip also concerned activity in June 2019 and was subsequently linked to the first Cybertip. The second Cybertip revealed conversations on Facebook Messenger that documented the solicitation and enticement of the victim to engage in sexually explicit conduct that resulted in the production of child pornography at the request of Butler. The conversations indicated that the two individuals had met in person in order to engage in illicit sexual activity.

After PPD identified Butler as the user of the Facebook account, officers discovered that Butler was a convicted sexual offender with a 2006 conviction for lewd and lascivious battery on a victim between 12- and 15-years-old. PPD officers then obtained a search warrant for all Facebook Messenger communications between Butler and the victim in this case. These messages confirmed that the victim was 15-years-old and showed that, during the timeframe that Butler and the victim were messaging, she moved with her family from Florida to Tennessee. In messages obtained

pursuant to the search warrant, Butler described his plans to travel to Tennessee to engage in sexual activity with the victim and his intention to bring another adult man with him to "take turns" with her. Excerpts from these messages were included in Butler's PSI.

The PSI also included a victim impact statement in which the victim's father explained that he and Butler were co-workers, and that he had considered Butler a good family friend whom he had trusted and invited to his home. The father conveyed the deep remorse he felt for having introduced Butler to his family, and how Butler's betrayal of his trust profoundly impacted him and his daughter. In asserting that Butler did not deserve another chance at freedom, the father expressed the unimaginable pain Butler had caused his daughter, describing his daughter as "no longer full of life" and that Butler had "robbed her of her chance to shine."

In calculating Butler's Sentencing Guidelines range, the PSI grouped Counts One and Two under U.S.S.G. § 3D1.2(a) because they involved the same victim and act or transaction. Using Count Two, the PSI assigned Butler a base offense level of 32 under § 2G2.1(a). It added two levels under § 2G2.1(b)(1)(B) because the offense conduct involved a minor who was between 12- and 16-years-old, and two levels under § 2G2.1(b)(2)(A) because Butler had a sexual relationship with the victim on multiple occasions. Because the offense conduct involved the use of a cellphone to solicit participation, two additional levels were added under § 2G2.1(b)(6)(B)(ii), resulting in an adjusted offense level of 38. The PSI also found Butler to be a repeat and dangerous sex offender

against minors under § 4B1.5(a)(1)(A), which likewise resulted in an offense level of 38. Butler's offense level was then reduced by two levels for acceptance of responsibility under § 3E1.1(a), for a total offense level of 36.

Regarding Butler's criminal history, the PSI initially assigned Butler a criminal history category of IV based on eight criminal history points. Five of these points were awarded for three controlled substance convictions from 2006, 2012, and 2016. Butler's three remaining criminal history points stem from his 2006 two-count conviction for lewd and lascivious battery and contributing to the delinquency of a child by impregnating a child under sixteen, in violation of Florida law. The PSI described the factual basis for the latter convictions as follows:

> [O]n or about October 18, 2000, the victim, a 12-year-old female, was walking to school when [Butler] drove by in his vehicle. The victim asked [Butler] to drop her off at school. After the victim got into [Butler's] vehicle, he took her behind a trailer on [M]ockingbird [L]ane and penetrated her with his penis. The victim told [Butler] that she was in pain and told him to stop which he refused. The victim stated that [Butler] "finished" and then took her to school. [Butler] told the victim not to tell anyone about the incident, and she did not . . . until April 25, 2001, when she told her sister that she might be pregnant. On June 25, 2001, the victim gave birth to a baby. On March 9,

6                    Opinion of the Court                    21-10659

2002, DNA test results revealed that [Butler] was the baby's father.

The PSI also contained the following information regarding Butler's other criminal conduct: "In 2002, prior to being arrested for the [3-point] offense . . . , [Butler], age 27, impregnated [another female victim], who was 15 years old. [Butler] was not charged for this criminal conduct."

Because Butler qualified as a repeat and dangerous sex offender against minors, the PSI increased his criminal history category from IV to V pursuant to § 4B1.5(a)(1)(A). With a total offense level of 36 and a criminal history category of V, the PSI reflected a Guidelines imprisonment range of 292–365 months. However, because of Butler's criminal history, the minimum term of imprisonment that he could receive on Count Two was 25 years (300 months). In light of this mandatory minimum, the PSI adjusted Butler's Guidelines range to 300–365 months. The Guidelines calculations were adopted by the district court and are uncontested on appeal.

In addition to the offense conduct and Butler's criminal history, the PSI contained personal and family information about Butler. This information included the fact that Butler had four children born to four mothers and that two of the mothers were underage (one 12-years-old and one 15-years-old) when Butler impregnated them.

B.

At sentencing, Butler urged the district court to give him the mandatory minimum sentence of 25 years. Butler, who was 47-years-old at the time of sentencing, stated that he would be "likely over 70 years of age at the time of his release," and attached a study of recidivism among sexual offenders which showed that such individuals are unlikely to re-offend after the age of 60. He also asserted that, in the offense where he impregnated a 12-year-old, the victim was a willing participant who misrepresented her age and that he had confused her with her 19-year-old sister. He attached a 2002 deposition of the 12-year-old victim's mother in which the mother stated that a lot of people think her 12-year-old daughter "looks older" than her 19-year-old daughter. Regarding the two convictions for which he was being sentenced, Butler argued that he was introduced to the victim through her and her father's use of marijuana, which Butler sold. Butler asserted that he was not a predator, but that his life of crime had introduced him "to minors who engaged in drug use and sex with adults." Accordingly, he argued that he had a low likelihood of reoffending if put under supervision.

The Government, in turn, argued for a total sentence at the upper end of the Guidelines range or above. It argued that the nature and circumstances of the offense warranted a severe total sentence because Butler had "engag[ed] in sexual acts with the victim, entic[ed] the victim to produce child pornography, convinc[ed] the victim to 'delete' evidence of their illicit relationship, and even attempt[ed] to introduce a third party for a violent sexual

encounter." It also highlighted Butler's two prior criminal sexual acts with minors and his prior convictions for drug trafficking, aggravated battery, and robbery. The Government asserted that the only way for the public to be protected from Butler was for him to be "incapacitated indefinitely."

During the sentencing hearing, the district court asked the Government why it had not charged Butler with the federal three strikes provision under 18 U.S.C. § 3559(c), which would have carried a mandatory life sentence. The Government stated in response that there was "a question of law as to whether [it] applies," and that it believed the court could pronounce the "same exact sentence"—life imprisonment—in any event. The court noted that it believed that the Government could have "successfully prosecuted" § 3559(c) based on the facts and the law.

The district court agreed with the Government that Butler was a dangerous offender, noting his history of hands-on conduct with minors. The court also noted that an "anomaly in the Guidelines," which "hasn't been fixed," prevented the court from applying U.S.S.G. § 4B1.5(b) because Butler had a prior sex conviction. Section 4B1.5(b) provides for special, increased offense levels for defendants being sentenced for sex crimes if they "engaged in a pattern of activity involving prohibited sexual conduct." Subsection (b) does not apply, however, to defendants with prior sex offense convictions who fall under subsection (a). The district court stated that "if subsection (b) could have applied, *which it should apply—* there's no question there's a pattern of activity involving

prohibited sexual conduct . . . —his Guidelines calculation would have been 360 to life; whereas here now . . . his Guidelines [calculation] is 300 to 365 months." The court found the Guidelines to be "strange" and "unfortunate" in this regard.

Regarding Butler's criminal history, the district court found that not all of Butler's prior criminal sexual conduct had been accounted for in his Guidelines range. The court also stated that the "record establishes overwhelmingly . . . that [Butler had] been part of at least an 18-year pattern of hands-on sexually abusive and exploitative conduct against children," and that none of his past sentences had deterred him. Accordingly, the district court found the following:

> There is just too much here, Mr. Butler, and you just haven't gotten the message. Again, a 12-year-old, a 15-year-old, and a 14-year-old. I don't think society can afford for you to have yet another chance—[your counsel] referred to opportunities, that you had opportunities to have sex with these kids. I feel like I have to remove those opportunities so that there is not any other child who is victimized by you in the future. I am going to vary from the Guidelines range and impose a life sentence in your case. And I feel very strongly that there is not a lesser sentence that would suffice to protect the community from you in the future in regards to sexual crimes against children. . . . For the reasons I've noted, I don't believe the

Guidelines calculation is sufficient, and I don't believe the 25 years mandatory minimum [is sufficient], which, again, doesn't take into account much of the conduct that I'm considering in imposing this sentence. . . . That's the sentence that will be handed down today in Mr. Butler's case. The sentence largely I believe needs to be imposed to protect the community but also to serve as a deterrent to other individuals.

The court clarified that it was sentencing Butler to life imprisonment on Count One and 50 years' imprisonment on Count Two, to run concurrently. The court later filed a statement of reasons which stated that the court had adopted the PSI without change. The statement of reasons noted many of the same considerations the court expressed at the sentencing hearing, including the offense conduct, Butler's history of sex crimes, and his other criminal history. The court also noted that, to "avoid unwarranted sentencing disparities" it had "determined that the facts would have supported a conviction under 18 U.S.C. § 3559, which would have carried a mandatory life sentence." Finally, it stated that it had considered Butler's arguments that the 12- and 15-year-old victims were willing participants, that his environment had created the opportunity for him to engage in sex with young girls, and that he did not possess any child pornography. The court, however, did not find that Butler's arguments justified a lesser sentence than life imprisonment.

This is Butler's appeal of the substantive reasonableness of his sentence.

## II.

We review the substantive reasonableness of a sentence for an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). When reviewing a sentence imposed outside of the Guidelines range, we "may consider the extent of the deviation, but must give due deference to the district court's decision that the [18 U.S.C.] § 3553(a) factors, on a whole, justify the extent of the variance." *Id.* In reviewing the reasonableness of a sentence, we will not substitute our own judgment for that of the sentencing court and we will affirm a sentence so long as the court's decision was "in the ballpark of permissible outcomes." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1257 (11th Cir. 2015).

A district court imposes a substantively unreasonable sentence, and thereby abuses its discretion, "when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc). A district court commits a clear error of judgment when it weighs the § 3553(a) sentencing factors unreasonably. *Id.*

Under § 3553(a), a sentencing court must impose a sentence that is "sufficient, but not greater than necessary" to reflect the seriousness of the offense, to promote respect for the law, to provide

just punishment for the offense, to afford adequate deterrence, and to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2). The court also must consider, among other factors, the nature and circumstances of the offense and the history and characteristics of the defendant, as well as "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* §§ 3553(a)(1), (6).

While sentencing courts are required to consider all of the sentencing factors, the weight given to each factor is committed to the sound discretion of the district court. *United States v. Amedeo*, 487 F.3d 823, 832 (11th Cir. 2007). We will not second guess the weight given to a § 3553(a) factor so long as the sentence is reasonable under the circumstances. *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008). In fact, a district court may attach great weight to one § 3553(a) factor over others. *See United States v. Overstreet*, 713 F.3d 627, 638 (11th Cir. 2013).

Sentences within the Guidelines range are afforded a presumption of reasonableness, however no such presumption—of reasonableness or unreasonableness—applies to sentences outside the Guidelines range. *See Gall*, 552 U.S. at 51. When imposing a variance, "a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain [her] conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." *Id.* at 46.

Upward variances are imposed based upon the § 3553(a) factors. *See, e.g., Overstreet*, 713 F.3d at 637–39. Thus, a sentencing court may impose an upward variance based upon uncharged conduct as it relates to the history and characteristics of the defendant, as well as the need to promote respect for the law, afford adequate deterrence, and protect the public. *See id.* at 639–40. The court may also impose an upward variance if it concludes that the Guidelines range was insufficient in light of a defendant's criminal history. *United States v. Sanchez*, 586 F.3d 918, 936 (11th Cir. 2009). When doing so, district courts are afforded "broad leeway in deciding how much weight to give to prior crimes the defendant has committed." *Rosales-Bruno*, 789 F.3d at 1261.

A district court's failure to discuss mitigating evidence does not indicate that the court "erroneously 'ignored' or failed to consider th[e] evidence." *Amedeo*, 487 F.3d at 833. Rather, a district court's acknowledgment that it has considered the § 3553(a) factors and the parties' arguments is sufficient. *United States v. Sarras*, 575 F.3d 1191, 1219 (11th Cir. 2009).

## III.

Butler's life sentence is substantively reasonable. As noted above, we have identified three ways in which a district court can abuse its discretion by imposing a substantively unreasonable sentence: (1) failing to properly consider a relevant sentencing factor that was due significant weight, (2) giving significant weight to a factor that was not relevant, or (3) committing a clear error of judgment by weighing the sentencing factors unreasonably. *Irey*, 612

F.3d at 1189. Butler has failed to show that the district court committed any such error.

Regarding the first way a sentencing court can abuse its discretion, Butler argues that the district court failed to consider his age, his amenability to treatment, his acceptance of responsibility, and the circumstances of his prior offenses. Butler's acceptance of responsibility, however, was correctly reflected in his Guidelines calculation. And the remaining three factors *were* considered, they just were deemed to be either aggravating or irrelevant rather than mitigating evidence warranting a lesser sentence. The district court specifically considered Butler's age; it just didn't find it to be the mitigating factor Butler argued it should be. The court gave great weight to the fact that Butler had engaged in an 18-year pattern of sexually abusive behavior towards children, which reflected the lack of a deterrent effect by his prior convictions, sexual offender registration requirement, or the 115 months he served in the federal department of corrections from 1994 to 2010. It was well within the court's discretion to do so. *See Amedeo*, 487 F.3d at 832.

In regard to the second way a sentencing court can abuse its discretion, Butler identifies no irrelevant sentencing factor that the district court gave significant weight to. The only factors that Butler identifies as being weighed too heavily are his history of sex crimes involving minors and the need to protect the community. These are, without a doubt, relevant factors to be considered when sentencing a repeat sex offender for a sex offense and it was certainly within the court's discretion to weigh them heavily. *See id.*

It is also noteworthy that defense counsel suggested at sentencing that the need to protect the community *is* the most important factor to be considered: "That's what I see as the most important factor in Mr. Butler's case that this Court ought to focus on, what's sufficient but not more than is required to protect the community in Mr. Butler's case." The district court's sentence reflects its agreement with defense counsel that this factor should weigh heavily, although the district court did not agree that the factor weighed in Butler's favor.

Finally, Butler has not shown that the district court abused its discretion by weighing the sentencing factors unreasonably. "In applying the § 3553(a) factors to a sentence, the weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court, and we will not substitute our judgment in weighing the relevant factors." *United States v. Martinez-Gonzalez*, 663 F.3d 1305, 1311 (11th Cir. 2011) (per curiam) (alteration adopted and internal quotation marks omitted). The district court considered the relevant sentencing factors and did not heavily weigh any irrelevant factor. The weight attributed to each sentencing factor is within the court's sound discretion, and the court did not commit a clear error of judgment in its weighing of the § 3553(a) factors in Butler's case.

## IV.

To conclude, the district court properly calculated the applicable Guidelines range but found that the resulting range did not adequately reflect Butler's criminal history or the need to protect

the public. This is a finding that the district court was within its discretion to make, as the Supreme Court has held that a variance from the Guidelines range can "be based on the sentencing judge's disagreement with whether [the advisory sentence] properly reflects the § 3553(a) factors." *Rosales-Bruno*, 789 F.3d at 1254. And Butler has not shown that the district court's emphasis on certain sentencing factors was "unjustified." *See Pugh*, 515 F.3d at 1191 (stating that "a district court's unjustified reliance on any one [§] 3553(a) factor may be a symptom of an unreasonable sentence"). Because Butler's life sentence is substantively reasonable, the judgment of the district court is **AFFIRMED.**